IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DC PRESERVATION LEAGUE**, 1328 Florida Avenue NW, 2nd Floor Washington, D.C. 20009<br><br>Plaintiff,<br><br>v.<br><br>**GENERAL SERVICES ADMINISTRATION**, 1800 F Street NW Washington, D.C. 20405<br><br>Defendant. | Civil Action No. _____<br><br>**COMPLAINT FOR DECLARATORY RELIEF**<br>(Freedom of Information Act, 5 U.S.C. § 552) |

### INTRODUCTION

1. This action is based on violations of the Freedom of Information Act ("FOIA" or "the Act"). 5 U.S.C. § 552. It challenges the United States General Services Administration's ("GSA" or "Defendant") unlawful failure to respond to the DC Preservation League's ("DCPL" or "Plaintiff") FOIA request within the time and manner FOIA requires. GSA not only failed to determine which records respond to DCPL's FOIA request about work on the exterior of the Dwight D. Eisenhower Executive Office Building ("EEOB") in Washington, D.C., but also failed to decide DCPL's request for expedited processing.

2. The purpose of FOIA is to "establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." S. Rep. No. 813, 89th Cong., 1st Sess., 3 (1965). "[D]isclosure, not secrecy, is the dominant objective of the Act." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976). Thus, FOIA requires federal agencies to disclose

records to any person upon request unless the information falls within one of nine narrow disclosure exemptions listed in the Act. *See* 5 U.S.C. §§ 552(a)(3)(A), (b); *see also Rose*, 425 U.S. at 361 ("These exemptions are explicitly made exclusive…and must be narrowly construed." (cleaned up)). Except in unusual circumstances, federal agencies must determine within ten (10) calendar days whether to grant requests for expedited processing and determine within twenty (20) business days whether requested records are exempt from disclosure, and if they are not, the agency must "promptly disclose" the records to the requester. 5 U.S.C. §§ 552(a)(6)(A)(i), (a)(3)(A), (a)(6)(C)(i). FOIA also requires federal agencies provide "for expedited processing of requests" where a requester demonstrates a "compelling need" or "in other cases determined by the agency." *Id.* §§ 552(a)(6)(E)(i)(I), (II).

3. On November 20, 2025, DCPL submitted a FOIA request (the "Request") to GSA seeking records related to planning, approval, procurement, and implementation of projects to clean, repair, repoint, paint, prime, coat, or otherwise alter the exterior of the EEOB during a specified time period. DCPL also requested expedited processing.

4. GSA acknowledged receipt of the Request and assigned it Case No. 2026-FOI-00605.

5. Since GSA received the Request on November 20, 2025, twenty-nine (29) business days have passed—excluding Saturdays, Sundays, and legal public holidays—yet GSA has not determined whether it will comply with the Request, produced any responsive records, or decided DCPL's request for expedited processing.

6. GSA violated FOIA in several ways. Within the timeframes required by FOIA, GSA did not decide DCPL's request for expedited processing, did not issue a determination on the

Request, did not provide an estimated completion date, and did not identify the scope of records it planned to produce or withhold under FOIA.

7. These failures amount to illegal, constructive withholdings of determinations and records responsive to the Request.

8. GSA's failures violate FOIA.

9. GSA missed every applicable FOIA deadline. The requested records are critically important for DCPL's mission and work and are necessary for related litigation Plaintiff has filed against GSA for alleged federal statutory violations.

10. GSA is improperly withholding agency records responsive to the Request that DCPL is legally entitled to under FOIA. Accordingly, DCPL seeks: (1) a declaration that GSA violated FOIA, and (2) an order compelling GSA to conduct an adequate search for responsive records, process the Request on an expedited basis, produce all nonexempt records promptly, and to provide a Vaughn index and justification for any record withholdings.

## JURISDICTION AND VENUE

11. This Court has jurisdiction under FOIA, 5 U.S.C. § 552(a)(4)(B), the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, and 28 U.S.C. § 1331.

12. Venue is proper in this Court under 5 U.S.C. § 552(a)(4)(B), which provides venue for all FOIA cases in the District of Columbia, and under 28 U.S.C. § 1391(e) because Plaintiff's principal place of business is in this District, the records are believed to be located in this District, and a substantial part of the events or omissions giving rise to the claim occurred in this District.

13. Declaratory relief is appropriate under 28 U.S.C. § 2201.

## PARTIES

14. **Plaintiff DC Preservation League** is a nonprofit, tax-exempt § 501(c)(3) membership organization with its principal office in Washington, D.C. DCPL's mission is to preserve, protect, and enhance the architectural and cultural heritage of Washington, D.C., through advocacy and education. DCPL uses public records, including records obtained through FOIA, to inform its advocacy, public education, and oversight of government actions that may affect historic properties.

15. **Defendant United States General Services Administration** is an agency of the United States within the meaning of 5 U.S.C. § 552(f)(1), headquartered in Washington, D.C. GSA owns and manages the EEOB as a part of its historic building portfolio (GSA Building Number DC0035ZZ). GSA maintains possession, custody, and control of the records that DCPL seeks, and as such, it is subject to FOIA pursuant to 5 U.S.C. § 552(f).

## STATUTORY FRAMEWORK

### I. Record Determination Deadline

16. FOIA, 5 U.S.C. § 552, and GSA's FOIA regulations, 41 C.F.R. §§ 105-60.000–60.10008, impose strict and rigorous deadlines on federal agencies. The Act requires a federal agency that receives a FOIA request to determine whether the requested records are exempt from disclosure under 5 U.S.C. § 552(b) and to communicate that determination to the requester within twenty (20) business days. 5 U.S.C. § 552(a)(6)(A)(i); 41 C.F.R. § 105-60.304(a). If the agency makes any adverse determination regarding a request, the agency must also communicate to the requester that it has a right to appeal that determination. 5 U.S.C. § 552(a)(6)(A)(i)(III). If the agency determines the records are not exempt from public disclosure, the agency is required to make the requested records "promptly available" to the requester. *Id.* §§ 552(a)(3)(A), (a)(6)(C)(i).

17.     FOIA also mandates that a federal agency that receives a request for records must inform the requester of "the date on which the agency originally received the request" and "an estimated date on which the agency will complete action on the request." *Id.* § 552(a)(7)(B). GSA regulations require the agency to "send requesters an acknowledgement letter within 2 business days" upon receipt of request. 41 C.F.R. § 105-60.301(b).

18.     FOIA provides only limited circumstances under which a federal agency may take longer than twenty (20) business days to make a determination. First, the agency may toll the twenty (20) business day deadline for up to ten (10) additional business days while the agency waits for the information it has reasonably requested from the requester. 5 U.S.C. § 552(a)(6)(A)(ii)(I). Second, the agency may also toll the twenty (20) business day deadline for up to ten (10) additional business days if it needs to clarify with the requester any issues regarding fee assessment. *Id.* § 552(a)(6)(A)(ii)(II). Additionally, if the agency faces "unusual circumstances," the agency may extend the twenty (20) business day deadline if the agency sets "forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched." *Id.* § 552(a)(6)(B)(i); *see also* 41 C.F.R. § 105-60.305. No extension will exceed ten (10) business days unless the agency provides written notice to the requester explaining the "unusual circumstances" requiring an extension, establishes the date on which the agency expects to make the determination, and gives the requester "an opportunity to limit the scope of the request so that it may be processed within that time limit or an opportunity to arrange with the agency an alternative time frame for processing the request or a modified request." 5 U.S.C. § 552(a)(6)(B)(ii). Under FOIA, "unusual circumstances" are defined as "the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request," "the need to search for, collect, and appropriately examine

a voluminous amount of separate and distinct records which are demanded in a single request," or "the need for consultations…with another agency having a substantial interest in the determination of the request or among two or more components of the agency having substantial subject-matter interest therein." *Id.* § 552(a)(6)(B)(iii).

## II.     Expedited Processing

19.     FOIA also requires federal agencies provide "for expedited processing of requests" where a requester demonstrates a "compelling need" or "in other cases determined by the agency." *Id.* §§ 552(a)(6)(E)(i)(I), (II). GSA regulations allow for expedited processing in two relevant circumstances: (1) where there is an "urgency to inform the public about an actual or alleged Federal Government activity, if made by a person who is primarily engaged in disseminating information;" and (2) where there is a "matter of widespread and exceptional media interest in which there exist possible questions about the Government's integrity that affect public confidence." 41 C.F.R. §§ 105-60.306(c)(2), (4). "GSA shall notify the requester within 10 calendar days…its decision whether to grant or deny expedited processing." *Id.* § 105-60.306(d); *see also* 5 U.S.C. § 552(a)(6)(E)(ii)(I). If GSA grants a request for expedited processing, "the request shall be given priority, placed in the processing track for expedited requests, and processed as soon as practicable." 41 C.F.R. § 105-60.306(d); *see also* 41 C.F.R. § 105-60.304(c), 5 U.S.C. § 552(a)(6)(E)(iii).

## III.    Administrative Exhaustion and Judicial Review

20.     A U.S. district court has jurisdiction "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B); *see also* 41 C.F.R. § 105-60.304(a).

21. Further, "[u]nder 5 U.S.C. § 552(a)(6)(E)(iii), failure of an agency to timely respond to a request for expedited processing is subject to judicial review." *Judicial Watch, Inc. v. U.S. Naval Observatory*, 160 F.Supp.2d 111, 112 (D.D.C. 2001); *see also Democracy Forward Found. v. Off. of Mgmt. & Budget*, 780 F.Supp.3d 61, 70–71 (D.D.C. 2025) (explaining that where an agency fails to make a determination for expedited processing within the ten-day limit, the requester has "constructively exhausted its administrative remedies").

## FACTUAL ALLEGATIONS

### I. The Related Action

22. On or about November 10, 2025, during an interview with Laura Ingraham for "'Seen and Unseen': Inside President Trump's White House renovations" on Fox News, President Donald Trump stated that he planned to paint the EEOB white and showed professional renderings depicting the building covered entirely in bright white paint. *See The Ingraham Angle*, "Seen and Unseen," FOX NEWS, https://www.foxnews.com/video/6385030226112. When asked if painting was the only planned activity, President Trump responded, "cleaning, and pointing, and painting. It needs other work too." *See id*. When asked when this work would occur, President Trump stated, "I'm getting bids right now from painters." *Id.*

23. The EEOB is a National Historic Landmark listed on the National Register of Historic Places since 1969. It is a part of the larger Lafayette Square National Historic Landmark District and is adjacent to the White House. GSA owns and manages the building.

24. As a National Historic Landmark and federally owned and managed building, changes to the historic EEOB are subject to the requirements of the National Historic Preservation Act ("NHPA"), 54 U.S.C. § 300101–307108, and National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321–4370h.

25. On November 11, 2025, DCPL, alongside other plaintiffs, filed an action against President Trump, GSA, the National Park Service, and related agency officials. Complaint, *Cultural Heritage Partners, PLLC ("CHP") v. Trump,* No. 1:25-cv-03969-DLF (D.D.C. Nov. 11, 2025), Dkt. No. 1. DCPL and other plaintiffs then filed a Motion for Temporary Restraining Order, Preliminary Injunction, and Expedited Hearing on November 17, 2025. Plaintiffs' Motion for Temp. Restraining Ord., Preliminary Injunction, and Expedited Hearing, *CHP v. Trump*, No. 1:25-cv-03969 (D.D.C. Nov. 17, 2025), Dkt. No. 7.

26. The November action alleges that the defendants violated the Constitution, NHPA, NEPA, and the Administrative Procedure Act by failing to fulfill NHPA and NEPA procedural requirements before taking actions that will change the EEOB. Complaint at 21–22, 28–29, *CHP v. Trump*, No. 1:25-cv-03969.

27. On December 12, 2025, in response to promises made by GSA committing to refrain from planning and execution of certain activities related to the EEOB until March 1, 2026, DCPL and other plaintiffs voluntarily withdrew, without prejudice, their Motion for Temporary Restraining Order, Preliminary Injunction, and Expedited Hearing. Notification of Voluntary Withdrawal of Plaintiffs' Motion for Preliminary Injunction, *CHP v. Trump*, No. 1:25-cv-03969 (D.D.C. Dec. 12, 2025), Dkt. No. 24.

28. The same day, the court ordered the defendants to file their motion to dismiss and motion for summary judgment, as well as an accompanying administrative record, on or before January 20, 2026. Minute Ord., *CHP v. Trump*, No. 1:25-cv-03969 (D.D.C. Dec. 12, 2025). DCPL and the other plaintiffs' opposition brief is due on or before February 3, 2026, and the defendants' reply is due on or before February 10, 2026. *Id.*

29. To shed light on the President's statements, and to ensure that DCPL and the public have the necessary information to understand the Administration's plans and actions regarding the EEOB, DCPL filed the Request involving records related to the proposed painting of the EEOB.

## II.  DCPL's FOIA Request

30. DCPL submitted a written FOIA request to GSA on November 20, 2025, via the agency's online Public Access Link ("PAL") portal, https://securefoia.gsa.gov/app/Home.aspx.

31. In the Request, DCPL sought: "all records concerning the planning, approval, procurement, or implementation of any project to clean, repair, repoint, paint, prime, coat, or otherwise alter the exterior of the Dwight D. Eisenhower Executive Office Building ('EEOB') from August 1, 2025, until the date GSA conducts its search."

32. The Request specified a date range for GSA's search of August 1, 2025, through the date that GSA conducts its search, and encompassed, among other things, communications, contracts, scopes of work, specifications, approvals, and related records of such exterior work.

33. In the Request, DCPL sought expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E). DCPL cited to the GSA FOIA regulations, which allow for expedited processing where: (1) there is an "urgency to inform the public about an actual or alleged Federal Government activity, if made by a person who is primarily engaged in disseminating information;" and (2) there is a "matter of widespread and exceptional media interest in which there exist possible questions about the Government's integrity that affect public confidence." 41 C.F.R. §§ 105-60.306(c)(2), (4).

34. The Request explained how DCPL meets these standards.

35. First, DCPL is an organization primarily engaged in disseminating information about the preservation, protection, and enhancement of historic sites in Washington, D.C, using e-newsletters, emails, and social media.

36. Second, the Request is urgent, seeking information about GSA's involvement in potentially unlawful actions permanently altering the EEOB, affecting the government's integrity as no NHPA or NEPA process has taken place. Combined with President Trump's recent actions demolishing the East Wing of the White House, it follows that the public and media would be concerned about the government's actions, and many news articles have already been published discussing the related litigation.[1]

37. DCPL's Executive Director, Rebecca Miller, certified the Request's statements supporting expedited processing, as required by 41 C.F.R. § 105-60.306(b).

### III. GSA's Acknowledgment and Status Updates

38. On November 20, 2025, GSA sent DCPL an automated email acknowledging receipt of the Request, assigning it Case No. 2026-FOI-00605, stating that the Request had been received by the GSA FOIA Office. The email explained that DCPL would "receive a more detailed acknowledgment letter from GSA."

---

[1] *See, e.g.*, Daniel Seiden, *Trump Officials Sued for Plan to Repaint Eisenhower Building (1)*, BLOOMBERG L. (Nov. 17, 2025), https://news.bloomberglaw.com/litigation/trump-officials-sued-for-plan-to-repaint-eisenhower-building; Jonathon Edwards, *Preservationists sue Trump over plans to paint Eisenhower building*, WASH. POST (Nov. 15, 2025), https://wapo.st/4porYnJ; Brianna Tucker, *Trump administration agrees not to paint the Eisenhower building before 2026*, WASH. POST (Nov. 19, 2025), https://wapo.st/48keCCo; Piper Hudspeth Blackburn & Betsy Klein, *Preservationists sue over Trump's latest plans to refashion a federal building to match his aesthetic*, CNN (Nov. 16, 2025), https://www.cnn.com/2025/11/16/politics/trump-sued-over-plans-to-paint-eisenhower-building-in-washington; Kristine Klein, *DC Preservation League and Cultural Heritage Partners file lawsuit over Trump's plans to repaint the Eisenhower Executive Building Office*, THE ARCHITECT'S NEWSPAPER (Nov. 17, 2025), https://www.archpaper.com/2025/11/lawsuit-repaint-eisenhower-executive-office-building/.

39. As of the date of this filing, DCPL has not received "a more detailed acknowledgment letter from GSA."

40. On December 1, 2025, GSA sent a second email stating that the status of DCPL's FOIA request had been updated to "Assigned for Processing."

41. The PAL portal for Case No. 2026-FOI-00605 likewise lists the Request as "Assigned for Processing," with no indication that GSA has made a determination to grant or deny the Request, no indication that any responsive records have been produced, and a total invoice amount of $0.

42. At no time has GSA issued a written decision granting or denying expedited processing of the Request or notifying DCPL of any right to appeal.

43. At no time has GSA issued a determination identifying the scope of any responsive records it intends to produce or withhold, invoking any FOIA exemptions, or notifying DCPL of any right to appeal.

44. GSA has not invoked any "unusual circumstances" or requested an extension of time under 5 U.S.C. § 552(a)(6)(B) in connection with the Request.

45. DCPL has not received a determination or production of responsive records from GSA in response to the Request.

46. The FOIA-mandated ten (10) calendar day deadline for responding to DCPL's request for expedited processing was December 1, 2025.

47. The FOIA-mandated twenty (20) business day deadline for responding to the Request was December 19, 2025.

//

//

IV.     **DCPL's Follow-Up**

48.     On December 3, 2025, DCPL sent GSA a follow-up email via the PAL portal referencing Case No. 2026-FOI-00605 and requesting a status update, including a decision on expedited processing and an estimated completion date.

49.     As of the filing of this Complaint, GSA has not responded to DCPL's December 3, 2025, follow-up email and has not otherwise provided any additional information or records.

## CLAIMS FOR RELIEF

**COUNT I – Failure to Make Timely Determination and Unlawful Withholding in Violation of FOIA (5 U.S.C. § 552)**

50.     DCPL realleges and incorporates by reference paragraphs 1–49 as if fully set forth herein.

51.     DCPL properly requested records within GSA's possession, custody, and control.

52.     FOIA requires GSA to determine within twenty (20) business days after receipt of a request whether it will comply with the request and notify the requester of its determination and the reasons therefor. 5 U.S.C. § 552(a)(6)(A)(i).

53.     FOIA also requires GSA to promptly make available all non-exempt records responsive to a proper request. *Id.* § 552(a)(3)(A).

54.     Under 5 U.S.C. § 552(a)(6)(A)(i), GSA was required to determine within twenty (20) business days after receipt of the Request whether it would comply and to notify DCPL of its determination and the reasons therefor.

55.     Counting from November 20, 2025, and excluding Saturdays, Sundays, and legal public holidays, more than twenty (20) business days have elapsed as of the filing of this Complaint.

56. GSA's acknowledgment email and "Assigned for Processing" status do not constitute a "determination" within the meaning of FOIA because they do not state whether GSA will comply with the Request, identify any responsive records, invoke any FOIA exemptions, or provide notice of appeal rights.

57. Because GSA has failed to comply with FOIA's time limits, DCPL has constructively exhausted its administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i).

58. GSA has violated FOIA by failing to make a timely determination as to whether it will comply with the Request, by failing to provide any responsive records, and by failing to provide a lawful justification for withholding any responsive records.

59. GSA's failure to timely determine whether to comply with the Request and its failure to produce responsive, non-exempt records constitute improper withholding of agency records under 5 U.S.C. §§ 552(a)(3) and (a)(4)(B).

60. DCPL is entitled to declaratory relief requiring GSA to promptly process the Request, make a determination in a manner that complies with FOIA, and promptly disclose all non-exempt records responsive thereto.

**COUNT II – Failure to Provide Expedited Processing in Violation of FOIA (5 U.S.C. § 552(a)(6)(E)) and GSA's Implementing Regulations (41 C.F.R. §§ 105-60.306(c))**

61. DCPL realleges and incorporates by reference paragraphs 1–60 as if fully set forth herein.

62. DCPL requested expedited processing of the Request pursuant to 5 U.S.C. §§ 552(a)(6)(E)(i)(I) and (II), and 41 C.F.R. §§ 105-60.306(c)(2) and (4).

63. DCPL satisfies the statutory and regulatory criteria for expedited processing because, among other reasons, the Request concerns ongoing and imminent government actions

affecting a nationally significant historic property and involves an urgency to inform the public about such actions. 41 C.F.R. §§ 105-60.306(c)(2), (4).

64. FOIA requires agencies to make a determination for requests for expedited processing within ten (10) days and process requests for expedited processing "as soon as practicable." 5 U.S.C. §§ 552(a)(6)(E)(ii)(I), (iii).

65. GSA's regulations further require that the agency determine whether to grant or deny a request for expedited processing within ten (10) calendar days after receipt and notify the requester of its decision and of the right to submit an administrative appeal. 41 C.F.R. § 105-60.306(d).

66. Counting from November 20, 2025, more than ten (10) calendar days have elapsed as of the filing of this Complaint.

67. GSA's acknowledgment email and "Assigned for Processing" status do not constitute a "determination" within the meaning of FOIA because they do not state whether GSA will approve or deny DCPL's request for expedited processing or provide notice of appeal rights.

68. Because GSA failed to comply with FOIA's time limits, DCPL has constructively exhausted its administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i).

69. To the extent any further administrative remedies might otherwise be available, their pursuit would be futile in light of GSA's failure to make a timely determination and its failure to decide DCPL's request for expedited processing.

70. GSA violated FOIA and its own regulations by failing to make any decision on the Request for expedited processing and by failing to process the Request on an expedited basis.

71. DCPL is entitled to a declaration that GSA violated FOIA and to an order requiring GSA to grant expedited processing and to process the Request immediately and ahead of non-expedited requests.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff DC Preservation League respectfully requests that this Court:

A. Declare that Defendant violated FOIA by failing to make a timely determination on DCPL's November 20, 2025, FOIA Request, by failing to decide DCPL's request for expedited processing, and by failing to promptly disclose responsive, non-exempt records;

B. Order Defendant to immediately process DCPL's FOIA Request on an expedited basis and to promptly disclose all records responsive to the Request;

C. Order Defendant, to the extent it asserts any FOIA exemptions, to provide DCPL with a Vaughn index or comparable detailed justification;

D. Enjoin Defendant from continuing to withhold any non-exempt records responsive to DCPL's FOIA Request;

E. Award DCPL its reasonable attorney's fees and costs incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

F. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Gregory Alan Werkheiser, Bar No. VA210
CULTURAL HERITAGE PARTNERS, PLLC
1717 Pennsylvania Avenue NW, Suite 1025,
Washington, DC 20006
Tel: (703) 408-2002
Email:  greg@culturalheritagepartners.com

/s/ Marion Forsyth Werkheiser, Bar No. 486465
CULTURAL HERITAGE PARTNERS, PLLC
1717 Pennsylvania Avenue NW, Suite 1025,
Washington, DC 20006
Tel: (202) 567-7594
Email: marion@culturalheritagepartners.com

/s/ Lydia Dexter, Bar No. OR0032
CULTURAL HERITAGE PARTNERS, PLLC
1717 Pennsylvania Avenue NW, Suite 1025,
Washington, DC 20006
Tel: (202) 567-7594
Email: lydia@culturalheritagepartners.com

COUNSEL FOR PLAINTIFFS