**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**DC PRESERVATION LEAGUE,**
1328 Florida Avenue NW, 2nd Floor
Washington, D.C. 20009

Plaintiff,

v.

**GENERAL SERVICES ADMINISTRATION,**
1800 F Street NW
Washington, D.C. 20405

Defendant.

Civil Action No. 1:26-cv-00032-JDB

**PLAINTIFF'S PROPOSED PRODUCTION SCHEDULE AND RESERVATION OF RIGHTS**

**PLAINTIFF'S PROPOSED PRODUCTION SCHEDULE AND RESERVATION OF RIGHTS**

Pursuant to this Court's March 9, 2026 Order, ECF No. 11, Plaintiff DC Preservation League ("DCPL") respectfully submits this Proposed Production Schedule. The Parties have conferred but have been unable to agree on a schedule. Plaintiff therefore files this separate proposal as contemplated by the Court's Order.

## I. MEET-AND-CONFER HISTORY

Plaintiff and Defendant General Services Administration ("GSA") have conferred by email and videoconference on multiple occasions between March 3, 2026, and March 30, 2026, to discuss Plaintiff's November 20, 2025 Freedom of Information Act ("FOIA") request. They remain at an impasse.

Plaintiff informed Defendant on March 30, 2026, that it would file this separate Proposed Production Schedule.

## II. AREAS OF DISAGREEMENT

### A. Processing Rate

GSA proposes to process its roughly 1,000 pages of responsive records at 500 pages per month. That rate would stretch production of a modest document set across at least two months, potentially more. DCPL has been waiting since November without receiving a single page in response to its request. This Court has ordered agency defendants to process 1,000 pages per month where the requested records were "directly tied to current, ongoing" government actions "of the highest national concern." Apr. 10, 2025 Minute Ord., *Citizens for Resp. & Ethics in D.C. v. U.S. DOGE Serv.*, 769 F. Supp. 3d 8 (D.D.C. 2025) ("*CREW*") (quoting *Ctr. for Pub. Integrity v. U.S. Dep't of Def.*, 411 F. Supp. 3d 5, 12 (D.D.C. 2019)).

Where an agency drags its feet on an expedited request, courts have gone further. "Relevant case law establishes that courts have the authority to impose concrete deadlines on agencies that delay the processing of requests meriting expedition," and "[t]hese cases implicitly reject the notion that the decision of practicability is to be determined solely by the agency." *Elec. Priv. Info. Ctr. v. Dep't of Just.*, 416 F. Supp. 2d 30, 38 (D.D.C. 2006); *see also Elec. Priv. Info. Ctr. v. Dep't of Just.*, No. 05-845, 2005 U.S. Dist. LEXIS 40318, at *4–5 (D.D.C. Nov. 13, 2005) (noting that the defendants' processing of the plaintiff's expedited request was "unnecessarily slow and inefficient" and ordering the agency to process 1,500 pages every 15 calendar days until processing was complete); *Leadership Conf. on Civ. Rts. v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005) (requiring the defendants to expedite processing and produce documents within ten months); *Aguilera v. Fed. Bureau of Investigation*, 941 F. Supp. 144, 153 (D.D.C. 1996) (requiring processing completed within approximately one month).

The records here concern the proposed project to paint the Eisenhower Executive Office Building ("EEOB"), a National Historic Landmark, white (the "Project"), which has generated sustained national media coverage and is the subject of active litigation before Judge Friedrich in this district. *Cultural Heritage Partners, PLLC ("CHP") v. Trump*, No. 1:25-cv-03969-DLF (D.D.C.). GSA has entirely failed to make a formal determination on DCPL's request for expedited processing. Against that backdrop, processing only 500 pages per month when there are 1,000 total pages is not a serious proposal.

**B. <u>The Inter-Agency Consultation Carve-Out</u>**

Defendant has indicated that an undetermined number of responsive documents may be subject to consultation that will indefinitely prolong GSA's ability to produce documents. But GSA has not claimed that any unusual circumstances exist. 5 U.S.C. § 552(a)(6)(B)(iii)(III) (allowing consultation only in "unusual circumstances" where there is "another agency having a substantial interest in the determination of the request").

Even where inter-agency consultation is warranted, it does not suspend the agency's disclosure obligations. FOIA requires that consultation "be conducted with all practicable speed." *Id.* §§ 552(a)(6)(B)(i), (iii)(III). Courts in this district have required agencies to process consultation records on a defined schedule rather than use the process as a basis for open-ended delay. *See CREW*, 769 F. Supp. 3d at 18, 31.

Further, Plaintiff is particularly concerned that the asserted need for consultation may extend to entities that are not properly considered "agencies" under FOIA or that do not have a direct role in creating the records at issue. 5 U.S.C. § 552(f)(1); 41 C.F.R. § 105-60.303(c)(1) (authorizing GSA to consult with "another agency" that originated the records or has a substantial interest in their releasability).

If, in the course of its review, GSA identifies records that it contends in good faith originated with another federal agency, the proposed schedule below accounts for that contingency and requires Defendant to identify the specific agencies for any claimed consultation within seven (7) days.

**C. Expedited Processing**

DCPL requested expedited processing when it submitted its FOIA request on November 20, 2025. GSA was required to rule on that request within ten calendar days, by December 1, 2025. *See* 5 U.S.C. § 552(a)(6)(E)(ii)(I); 41 C.F.R. § 105-60.306(d); ECF No. 1 ¶¶ 42, 46, 61–71. GSA did not grant the request. It did not deny it. It did not respond at all. GSA has made no formal determination, not even an adverse one that DCPL could have appealed through administrative channels.

On the merits, DCPL's request presents a strong case for expedited processing under the "widespread and exceptional media interest" standard in GSA's own regulations. 41 C.F.R. § 105-60.306(c)(4). The EEOB exterior project has been the subject of sustained national media coverage and is being actively litigated before Judge Friedrich in this district. The Court should weigh GSA's total inaction on this front when evaluating what production schedule is appropriate.

## III. URGENCY OF PRODUCTION

The need for these records is not abstract. The government itself has confirmed that the EEOB Project is moving forward on a compressed timeline. Defendants' Memo. of Points & Auth. in Support of Their Mot. to Dismiss, *CHP v. Trump*, (D.D.C. Mar. 13, 2026), Dkt. No. 38-1; Second Declaration of Heather Martin ("Second Martin Declaration"), Deputy Assistant to the President (D.D.C. Mar. 13, 2026), Dkt. No. 38-2. The Second Martin Declaration of Heather Martin states that a contractor has been engaged to prepare an Environmental Assessment ("EA") under the

National Environmental Policy Act ("NEPA"); the EA is expected to be finalized no earlier than June 24, 2026, with at least 30 days of public comment to follow; and formal submissions to the Commission of Fine Arts ("CFA") and the National Capital Planning Commission ("NCPC") are scheduled to begin on April 2, and April 3, 2026, respectively. Dkt. 38-2 ¶ 5, 8, 10. The Office of Administration is also in contact with the Advisory Council on Historic Preservation and the D.C. State Historic Preservation Office regarding National Historic Preservation Act ("NHPA") Section 106 consultation. *Id.*

DCPL exists to preserve Washington's architectural and cultural heritage. Without these records, it cannot engage in the NEPA, CFA, NCPC, and Section 106 processes that are already underway. A production schedule that stretches across months, with an undefined consultation hold layered on top, would run out the clock on those proceedings.

## IV. PLAINTIFF'S PROPOSED SCHEDULE AND ORDER

DCPL submitted its FOIA request on November 20, 2025. One hundred and thirty (130) days have passed. GSA has not produced a single page, has not issued a determination on the request, and has not acted on the request for expedited processing. The agency's own estimate puts the universe of responsive records at approximately 1,000 pages. Plaintiff respectfully requests that the Court order the following:

1. GSA shall process and produce all responsive records on a rolling basis, with initial production no later than 14 days after entry of the Court's Order. GSA shall produce all records within 30 days of the Court's Order.

2. To the extent GSA identifies records that it contends in good faith originated with another federal agency, GSA shall identify those records and the relevant agencies within 7 days and shall complete any consultation within the 30-day production deadline.

3. Within 14 days of the date of the Court's Order, GSA shall confirm whether supplemental searches will be conducted and, if so, identify the estimated additional volume of responsive records and a schedule for their processing.

4. For any records withheld in whole or in part, GSA shall produce a *Vaughn* index concurrent with the final production identifying each withheld record, the exemption(s) claimed, and a particularized explanation of how each exemption applies.

5. The Parties shall file a joint status report 14 days after entry of the Court's Order reporting on the progress of production.

**V. DISPOSITIVE MOTIONS AND RESERVATION OF RIGHTS**

The Court's Order also contemplated a briefing schedule for dispositive motions. Because Defendant has indicated it intends to file its own proposed production schedule today, Plaintiff does not seek dispositive motion briefing at this time. To the extent the Parties can agree on a production schedule, or the Court orders one, briefing on the merits may be unnecessary. Plaintiff does not wish to impose on the Court's time with premature motion practice.

Plaintiff reserves all rights under FOIA, however, including but not limited to the right to move for summary judgment in the event GSA fails to comply with any Court-ordered schedule, withholds records without adequate justification, fails to conduct an adequate search for responsive records, or otherwise violates the statute. GSA's Answer asserts that it has "exercised due diligence" and that "exceptional circumstances exist" necessitating additional time. ECF No. 10 at 12. The record to date suggests otherwise: 130 days without a single page produced, no determination on the request, and no ruling on expedited processing. Plaintiff will not hesitate to seek judicial relief if GSA's conduct going forward mirrors its conduct to date.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court adopt Plaintiff's Proposed Processing Schedule.

Respectfully submitted,

/s/ Gregory Alan Werkheiser, Bar No. VA210

CULTURAL HERITAGE PARTNERS, PLLC
1717 Pennsylvania Avenue NW, Suite 1025,
Washington, DC 20006
Tel: (703) 408-2002
Email: greg@culturalheritagepartners.com

/s/ Marion Forsyth Werkheiser, Bar No. 486465
CULTURAL HERITAGE PARTNERS, PLLC
1717 Pennsylvania Avenue NW, Suite 1025,
Washington, DC 20006
Tel: (202) 567-7594
Email: marion@culturalheritagepartners.com

/s/ Lydia Dexter, Bar No. OR0032
CULTURAL HERITAGE PARTNERS, PLLC
1717 Pennsylvania Avenue NW, Suite 1025,
Washington, DC 20006
Tel: (202) 567-7594
Email: lydia@culturalheritagepartners.com

/s/ Caitlin McCurdy, Bar No. NH0004
CULTURAL HERITAGE PARTNERS, PLLC
1717 Pennsylvania Avenue NW, Suite 1025,
Washington, DC 20006
Tel: (202) 567-7594
Email: caitlin@culturalheritagepartners.com

COUNSEL FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served on Defendant via CM/ECF electronic notice.

/s/ ***Gregory Alan Werkheiser***
*GREGORY ALAN WERKHEISER*
Attorney for Plaintiff